UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| REONTE C. MOORE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:24-cv-01128-SEB-TAB ) |
| FOSTER, et al., | ) ) ) |
| Defendants. | ) |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Reonte Moore, who is incarcerated at Pendleton Correctional Facility ("PCF"), alleges that the defendants denied him access to his religious materials in violation of his First Amendment rights when he was held in restrictive housing from April 24, 2024, through June 19, 2024. The defendants have moved for summary judgment on these claims. For the reasons below, that motion is **GRANTED IN PART AND DENIED IN PART**.

**I.
Summary Judgment Standard**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A

1

court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II.
## Factual Background

Because the defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Khungar*, 985 F.3d at 572–73.

### A. The Parties

During the time at issue, Mr. Moore was a practicing Muslim. Dkt. 29-1 at 17 (Moore Dep.).

Chance Bishop was a property officer for G Cellhouse ("GCH") at PCF. Dkt. 29-2 ¶ 4 (Bishop Aff.). Dennis Davis was the property officer for general population housing. Dkt. 29-3 ¶ 4 (Davis. Aff.). Officer Davis did not inventory Mr. Moore's property during the relevant time, and did not have any involvement with Mr. Moore's property, including storage or distribution. *Id.* ¶ 8.

Joseph Cooper was a Sergeant in GCH. Dkt. 29-4 ¶ 3 (Cooper Aff.). During Sergeant Cooper's shifts, he worked in GCH with two Correctional Officers. *Id.* ¶ 4. Sergeant Cooper completed range duties for ranges 1 and 2 of GCH, one officer took ranges 3 and 4, and the second officer took ranges 5 and 6. *Id.* Sergeant Cooper was not involved with searching, inventorying, storing, or distributing property items. *Id.* ¶ 10.

Defendant Stephen Foster was a Lieutenant in GCH. Dkt. 29-5 ¶ 2. Lieutenant Foster was not generally involved with daily duties in GCH or present on the ranges and he was not involved with inmate property. Dkt. 29-5 ¶ 3, 4.

Defendant Austin Harmon was a Sergeant. Dkt. 29-6 ¶ 2. Sergeant Harmon was not involved with processing, inventorying, storing, or managing inmate property aside from providing the care package from the general population housing units, and he did not have access to the property room to retrieve property items. *Id.* ¶ 4.

**B. Deprivation of Mr. Moore's Religious Materials**

On April 24, 2024, Mr. Moore was moved from GCH to H Cellhouse ("HCH"), a general population unit. Dkt. 29-7 at 2; dkt. 29-3 ¶ 10. When an inmate was moved from GCH to a general population housing unit, he either received his property items that same day or the next day depending on who had inventoried their property when moved to GCH. Dkt. 29-2 ¶ 11; dkt. 29-3 ¶ 11.

About a week after his move to HCH, on April 30, 2024, Mr. Moore was moved to GCH, range 2D, pending a disciplinary action. Dkt. 29-7 at 2; dkt. 29-2 ¶ 12. The 2D range in GCH was a strip cell range. Dkt. 29-2 ¶ 13. Individuals housed on the 2D strip cell range in GCH were permitted fewer property items than other ranges in GCH for safety and security purposes. Dkt. 29-2 ¶ 13. They could possess their state I.D., inhaler, glasses, and certain clothing items, bedding

3

items, towels, and basic hygiene items. Dkt. 29-3 ¶ 9. Religious materials were not permitted on the 2D range of GCH. *Id.* The reason that individuals on the 2D range were allowed fewer property items was that several of the inmates housed on that range had been involved in assaultive behavior against staff or other inmates. Dkt. 29-5 ¶ 6.

When an incarcerated individual was moved from a general population housing unit to GCH, their property was packed by staff in the housing unit the inmate was leaving. Dkt. 29-2 ¶ 5. Staff members packing the inmate's property created a care package of property he was allowed to have in GCH. Dkt. 29-2 ¶ 6. The property not included with the individual's care package that was packed separately was sent to the property officer for non-restricted housing units. *Id.* ¶ 7. The property of individuals moved to GCH had to be reviewed to ensure the safety and security of the unit by ensuring that only permitted property items got into the unit and to limit contraband. *Id.* ¶ 9.

Once the property officer received the property, it was inventoried on a first come first served basis by either Officer Bishop or Officer Davis depending on who got to the property items first. Dkt. 29-2 ¶ 8; dkt. 29-3 ¶ 7. Officer Davis helped Officer Bishop with inventorying property items for individuals housed in GCH when he could. Dkt. 29-3 ¶ 6. Property that Officer Bishop inventoried was taken to the GCH property room. *Id.* ¶ 7.

On May 7, 2024, Mr. Moore was moved from range 2D in GCH to range 3C in GCH. Dkt. 29-7 at 3. After an individual was moved from the 2D strip cell range in GCH to a different range in GCH, he could receive allowable property items. Dkt. 29-2 ¶ 14. Officer Bishop completed an Inventory of Offender Personal Property for Mr. Moore on or around May 28, 2024. Dkt. 29-2 ¶ 15; dkt. 29-2 at 4. The Inventory indicated that Mr. Moore received his religious book and prayer rug on or around May 28, 2024. Mr. Moore did not receive all of his religious books and potential

4

other religious items while in GCH, and those items in excess were stored until Mr. Moore was removed from GCH. *See* Dkt. 29-2 at 4.

On June 19, 2024, Mr. Moore was moved from GCH to J Cellhouse ("JCH"). Dkt. 29-7 at 2.

## III.
## Discussion

The defendants seek summary judgment on Mr. Moore's claims. First, many of the defendants contend that they were not responsible for the deprivation of Mr. Moore's religious property. They further argue that any deprivation of his property did not violate his First Amendment rights.

### A. Personal Responsibility

Defendants Davis, Cooper, Foster, and Harmon argue that they were not personally involved in the restriction of Mr. Moore's religious property. "'To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right.'" *Whitfield v. Spiller*, 76 F.4th 698, 706 (7th Cir. 2023) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). For this purpose, each defendant is considered independently. *Id.*

It is undisputed that defendants Davis, Cooper, Foster, and Harmon were not responsible for inventorying or distributing Mr. Moore's property. Dkt. 29-2 ¶ 8; dkt. 29-4 ¶ 10; 29-5 ¶ 10; dkt. 29-6 ¶ 2. While Mr. Moore contends that he asked the defendants about his religious materials, he presents no evidence that these defendants had any role in collecting, distributing, or denying him his property. *See* dkt. 42 at 2 (Verified Summary Judgment Response). Therefore, based on the evidence before the Court, no reasonable jury could conclude that these defendants were involved in the alleged denial of religious property and these defendants are entitled to summary judgment.

5

### B. First Amendment Free Exercise

The only claim left is Mr. Moore's claim against Officer Bishop. To succeed on his First Amendment free-exercise claim, Mr. Moore must convince the factfinder that Officer Bishop "personally and unjustifiably placed a substantial burden on his religious practices." *Thompson v. Holm*, 809 F.3d 376, 379 (7th Cir. 2016). "A substantial burden puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* (cleaned up). An isolated instance that impacts an inmate's religious practice will often be "de minimis" and "not of constitutional dimension." *Rapier v. Harris*, 172 F.3d 999, 1006 n.4 (7th Cir. 1999) (denial of pork-free meals on three isolated occasions "does not constitute more than a de minimis burden on [plaintiff's] free exercise of religion").

"[A]n inmate is not entitled to follow every aspect of his religion; the prison may restrict the inmate's practices if its legitimate penological interests outweigh the prisoner's religious interests." *Kaufman v. McCaughtry*, 419 F.3d 678, 683 (7th Cir. 2005). Thus, even a substantial burden is permitted if the burden is "reasonably related to legitimate penological objectives." *Vinning-El v. Evans*, 657 F.3d 591, 592−93 (7th Cir. 2011) (citing *Turner v. Safley*, 482 U.S. 78, 89−91 (1987)). "Courts consider four factors when evaluating a prison policy against a First Amendment claim: (1) whether the policy rationally relates to a legitimate governmental objective; (2) whether the inmate has an alternative means of exercising the right; (3) the impact that accommodating the right will have on security; and (4) whether ready alternatives exist to the prison's policy." *Larry v. Goldsmith*, 799 F. App'x 413, 415 (7th Cir. 2020); *see Turner*, 482 U.S. at 89−91 (outlining similar factors).

First, Officer Bishop argues that Mr. Moore has not presented evidence that his religious practices were substantially burdened. But Mr. Moore has affirmed that, as a Muslim, he prays

6

five times a day and needs a prayer rug, Quran, and other reading material to do so. Dkt. 42 at 3. This is enough to allow a reasonable jury to conclude that denying him those materials substantially burdened his religious practice. *See Printup v. Vanihel*, No. 222CV00098JPHMKK, 2024 WL 1241834, at *3 (S.D. Ind. Mar. 21, 2024) (finding that a reasonable jury could conclude that denying of items prescribed by a Muslim's faith as necessary for prayer was a substantial deprivation).

Next, the Officer Bishop argues that the restriction on Mr. Moore's property was supported by legitimate penological interests. Specifically, he argues that, when an individual is on strip cell status, his property must be restricted because many inmates on strip cell have engaged in assaultive behaviors. *See* dkt. 29-5 ¶ 6. He goes on to explain that, when an individual is moved to GCH, his property must be inventoried to ensure that no dangerous contraband enters that cellhouse. Dkt. 29-2 ¶ 9. Even if this suffices as a legitimate penological reason to deny Mr. Moore his prayer rug and Quran while he was on strip cell status, he was only on the strip cell range for a week. Dkt. 29-2 ¶ 14. When Mr. Moore was moved out of the strip cell range, he still did not receive his religious book or prayer rug for three more weeks. Dkt. 29-2 ¶ 15. Officer Bishop suggests that this delay was administrative, stating that property is inventoried on a first come first served basis, but he has not otherwise identified a legitimate penological reason for this delay. Further, Mr. Moore affirms that other inmates who complained about being denied their property would receive it. Dkt. 42 at 3. Thus, a reasonable jury that believed this testimony could conclude that the asserted explanations for denying property in GCH did not amount to legitimate penological reasons.

Because Mr. Moore has designated evidence from which a reasonable jury could conclude that Mr. Moore's religious practices were substantially burdened and that Officer Bishop has not

provided a legitimate penological reason for this burden, Officer Bishop is not entitled to summary judgment.

## IV.
## Conclusion

For the reasons discussed above, the defendants' motion for summary judgment, dkt. [28], is **granted in part and denied in part**. The motion is **granted** as to the claims against Dennis Davis, Joseph Cooper, Stephen Foster, and Austin Harmon. The **clerk shall terminate** these defendants on the docket. The motion is **denied** as to the claim against Chance Bishop.

The Court notes that under the Prison Litigation Reform Act, "No Federal action may be brought by a prisoner ... for mental or emotional injury suffered in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Under this statute, Mr. Moore may be entitled to nominal or punitive, but not compensatory, damages for his First Amendment claim. *See Hacker v. Dart*, 62 F.4th 1073, 1086 (7th Cir. 2023). Further, the current record before the Court does not contain evidence that would support an award of punitive damages. With this in mind, the magistrate judge is requested to have a conference with the parties to determine the appropriate next steps.

**IT IS SO ORDERED.**

Date: 2/24/2026

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

REONTE C. MOORE
229521
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Inmate Mail/Parcels
4490 West Reformatory Road
PENDLETON, IN 46064

All Electronically Registered Counsel

Magistrate Judge Tim A. Baker